UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**CHARLES S. POPE**,                                        Civil Case No. 3:10-CV-00632-KI

                    Plaintiff,

                                 OPINION AND ORDER

                v.

**OREGON DEPARTMENT OF CORRECTIONS;**
**MAX WILLIAMS**, Director; **M. NOOTH**,
Superintendent; **J. GILMORE**, Assistant Superintendent,
Transitions and P.R.E.A.; **A. HANNON**, Institution
Security Manager; **CAPT. OGDEN**, Operations;
and **JOHN DOE**, Defendant(s) of the Sexual Assault
Response Team and Sniec Committee Members,

                    Defendants.


        Charles S. Pope, SID#7174683
        Snake River Correctional Institution
        777 Stanton Blvd.
        Ontario, Oregon  97914

              Pro Se Plaintiff


Page 1 - OPINION AND ORDER

John R. Kroger
Attorney General
Kristin A. Winges-Yanez
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon  97301-4096

       Attorneys for Defendants

KING, Judge:

Plaintiff Charles S. Pope, a prisoner at Snake River Correctional Institution ("SRCI"), brings this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff alleges multiple correctional officials denied him the right to be celled with a particular inmate, prison employment and programming in violation of his rights to due process and equal protection.  I previously dismissed some of plaintiff's claims and a number of the defendants.  Pending before me is defendants'[1] Motion for Summary Judgment [58] to dismiss plaintiff's remaining claim that his right to equal protection was violated when defendants denied him incentive move requests, labeled him a sexual predator, and placed him under the supervision of the Sexual Assault Response Team ("SART") and the Security Threat Management ("STM") Unit, based upon his sexual orientation.

## UNDISPUTED FACTS

On September 12, 2008, plaintiff asked to be celled with a younger inmate.  Plaintiff subsequently told other inmates that "anything they said or did to the younger inmate was the

---

[1]The only remaining defendants are Lieutenant Henning, Captain Milhorn, Institution Security Manager Al Hannon, Assistant Superintendent Judy Gilmore, and Superintendent Mark Nooth.

same thing as doing it to him." Claude Schultz Decl. ¶ 8. SRCI staff met with the inmate with

whom plaintiff wished to cell and found him to be "vulnerable. His physical features and

mannerisms are effeminate." Schultz Decl. Ex. 8, at 1. SRCI staff thought plaintiff may have

been "grooming" the inmate. Id. SRCI staff identified the inmate as "vulnerable" under Oregon

Department of Correction ("ODOC") policy 40.1.13, which implements the Prison Rape

Elimination Act ("PREA"), 42 U.S.C. § 15602, et seq.

On September 30, 2008, plaintiff submitted an Inmate Communication Form to Assistant

Superintendent Judy Gilmore complaining about the lack of response on his requested cell move.

He reported that the inmate with whom he wished to cell had been moved to another complex,

that a PREA officer or counselor had told another inmate that the young inmate had been moved

because of plaintiff, and that there were rumors plaintiff had an extensive case file as a predatory

inmate. Pl's. Am. Compl. Ex. A-32.

On October 4, 2008, a PREA officer interviewed plaintiff about the situation. Id. Ex. A-

31. On October 5, 2008, plaintiff met with another SRCI staff member who informed plaintiff

that he would talk with Institution Security Manager Al Hannon, and that Hannon would be the

person with whom to discuss any PREA issues.

On October 9, 2008, Assistant Superintendent Gilmore responded to plaintiff's

September 30 communication. She informed him that:

> Lt. Taylor is a member of the SRCI Sexual Assault Response Team. The purpose
> of a sexual assault response team is to uphold DOC policy # 40.1.13, Prison Rape
> Elimination Act. The Prison Rape Elimination Act's purpose is to provide
> uniform guidelines and procedures to reduce the risk of prison sexual assault and
> sexual activity.

> The Sexual Assault Response Team's responsibility is to prevent and eliminate any inappropriate relationship amongst inmates housed within the Department of Corrections, real or perceived.
>
> Lt. Taylor has spoken to you in regards to any cell move you may be receiving. If you need further clarification or need to speak to Lt. Taylor again about this issue, please do not hesitate to contact him regarding your situation.

Schultz Decl. Ex. 8, at 2.

Based on the information they had learned, defendants placed plaintiff on "high alert" on February 25, 2009 and the STM Unit began managing him; he was under no restrictions, but requests for work assignments, cell moves and activity participation needed to be approved by the STM Unit. A note from a March 5, 2009, SRCI SART meeting reported plaintiff was on continued watch. On March 31, 2009, SRCI staff intercepted a letter from plaintiff to a "PREA Inmate" in which plaintiff reported having "feelings" for another inmate. SRCI staff reported to SART that "it is bothersome that inmate Pope seems to be friends with young and possibly sexually impulsive inmates." Id. Ex. 8, at 1.

Plaintiff requested administrative review. On April 15, 2009, he wrote to find out the status of his appeal. In response, Lieutenant Foote wrote, "If the SART team says I no longer need to manage you then you will not have a STM follow up meeting." Pl.'s Am. Compl. Ex. A-10. After consultation with the PREA Manager, plaintiff was removed from STM Unit management on May 26, 2009.

Plaintiff alleges Assistant Superintendent Gilmore informed him that "plaintiff could live with whomever he chooses, by rule, unless they are known to be bisexual or gay. When asked why, she stated, 'Because it's illegal.'" Am. Compl. ¶ 5.

Page 4 - OPINION AND ORDER

In May 2010, plaintiff submitted a request for permission to cell with inmate Wolfard. Such benefits are granted if both inmates meet the following criteria: (1) both inmates request the move; (2) both inmates have 90 days' clear conduct; (3) both have been housed for three months at SRCI; (4) both have been housed at any ODOC facility for at least six months; and (5) both have not received an incentive move during the previous 12 months, or previous six months if assigned to privileged housing. Defendants denied the request, finding that inmate Wolfard did not have 90 days of clear conduct and had not been housed at SRCI long enough. After receiving the cell move request, defendants questioned inmate Wolfard about his relationship with plaintiff, focusing in particular on any inappropriate sexual interactions.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Service, Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (citation omitted).

## DISCUSSION

Plaintiff alleges defendants "have labeled the plaintiff explicitly and implicitly a sexual predator under ODOC PREA Policy 40.1.13 without factual evidence[,]" and based on his sexual

orientation alone.  Am. Compl. at 7.  The result of that label "place[d] plaintiff's safety and

welfare at risk[,] . . . segregate[d] him" from like-minded friends, put him under SART

supervision, and resulted in a denial of an incentive move, violating his rights to equal protection.

Id.  Plaintiff argues that the PREA identification was not in compliance with the PREA policy,

citing provisions of the policy related to Intake evaluations.  He also asserts he was placed under

the STM Unit's supervision only after he requested an incentive move.  He explains that his

comment about protecting the other inmate was simply motivated by a desire to help the inmate.

Pursuant to ODOC regulations, the STM Unit is entitled to identify and manage inmates

that "in the judgment of the department present an elevated security threat risk based on their

criminal history, institutional conduct history, present behavior, interstate transfer status, escape

history, and based on intelligence."  OAR 291-069-0200(2).  Pursuant to that policy, the STM

Unit may "[i]nvestigate security threat related behavior or activity by inmates in a fair and

objective manner."  OAR 291-069-0200(3)(a)(C).  Inmates who are identified by the Unit as

"high alert" inmates may be managed by the STM Unit pursuant to an Inmate Management Plan.

OAR 291-069-0270.  The Inmate Management Plan may "direct the denial, removal, suspension,

restriction or modification of inmate programs, services or activities for the inmate to encourage

an inmate to modify his or her behavior to conform to department rules, standards, and staff

expectations, and to advance the inmate towards appropriate pro-social behavior, in accordance

with these rules."  OAR 291-069-0270(2)(b).  A "high alert" inmate may obtain administrative

review by submitting a written request.

Under PREA, ODOC is required to "identify opportunities to separate and carefully

monitor . . . sexually abusive and vulnerable inmates[.]"  Schultz Decl. Ex. 3, DOC Policy

40.1.3(I)(D).  An "abuser" is defined to be "[t]he inmate committing sexual assault against another inmate, or coercing sex from another inmate in exchange for protection or other favors within the prison setting."  Id. at (II)(A).  A "vulnerable inmate" is defined to be "[a]n inmate who is at high risk to become a victim of sexual assault by another inmate(s) due to characteristics related to age, physical stature, criminal history and physical or mental disabilities, or past history of being victimized."  Id. at (II)(O).  ODOC is specifically required to try to prevent sexual assault.  Id. at (V)(A).  ODOC staff is required to "be aware of sexually abusive behavior," which includes "associating or pairing up with inmates who meet the profile of a potential victim[.]"  Id. at (V)(F).

Under PREA, each inmate is assessed at the Intake Center to determine whether they are "vulnerable inmates" or "sexually abusive inmates."  The latter is determined based on, but not limited to, criminal history, misconduct reports, and any collateral information in police reports.

To the extent plaintiff is asserting a violation of PREA, there is no private right of action.  Porter v. Jennings, No. 1:10-cv-01811-AWI-DLB PC, 2012 WL 1434986, at *1 (E.D. Cal. Apr. 25, 2012) (citing numerous cases).  Furthermore, plaintiff improperly relies on the criteria ODOC staff are required to consult when evaluating inmates at Intake.  ODOC staff are not limited to those criteria in implementing PREA.

As for plaintiff's equal protection claim, "plaintiff[] must show that the defendants, acting under color of state law, discriminated against [him] as [a] member[] of an identifiable class and that the discrimination was intentional," Flores v. Morgan Hill Unified Sch. Dist., 324 F.3d 1100, 1134 (9th Cir. 2003), or that the challenged government action has a disproportionate impact on the class and is not supported by a rational reason.  Comm. Concerning Cmty.

Improvement v. City of Modesto, 583 F.3d 690, 703 (9th Cir. 2009).  For the purposes of his

equal protection claim, plaintiff is a member of an identifiable class because he alleges

discrimination on the basis of sexual orientation.  Flores, 324 F.3d at 1135 (citing High Tech

Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 570-71 (9th Cir. 1990)).

   Reviewing the record in the light most favorable to plaintiff, there is insufficient evidence

for a jury to reasonably find that defendants treated similarly situated heterosexual inmates

differently or intentionally discriminated against him because of his sexual orientation.  Instead,

the evidence reflects that  defendants were concerned about plaintiff's interest in living with a

particular inmate who met the PREA definition of a "vulnerable" inmate.  Additionally,

defendants learned that plaintiff had made comments to other inmates suggesting he had offered

protection to the younger inmate.  In Lieutenant Schultz's experience, the statement was "typical

behavior of an abuser in a prison environment regardless of their sexual orientation."  Schultz

Decl. ¶ 13.  Lieutenant Schultz explained that although plaintiff may simply have been

attempting to protect the younger inmate, his "behavior raised concerns and he was placed under

STM supervision without restrictions in order to monitor and assess his behavior."  Id.

Lieutenant Schultz underscores that ODOC does not label inmates as sexual predators.  In sum,

plaintiff fails to raise a genuine issue of fact that would prevent summary judgment in favor of

the defendants.

   Even assuming different treatment from others similarly situated, the only question is

whether plaintiff's placement under STM Unit supervision pursuant to PREA was "reasonably

related to legitimate penological interests."  Turner v. Safly, 482 U.S. 78, 89 (1987).  There is no

question that prohibiting sexual activity in prison is a legitimate governmental interest and that

defendants have an obligation under PREA to prevent and discourage sexual aggression and misconduct. See Mintun v. Peterson, No. CV06–447–S–BLW, 2010 WL 1338148, at *11 (D. Idaho Mar. 30, 2010) ("[P]rotecting inmates from sexually-transmitted diseases and keeping health care costs low justify the prohibition on sexual activity between inmates."); see also Veney v. Wyche, 293 F.3d 726, 733 (4th Cir. 2002) (upholding single occupancy cells for homosexual prisoners because "sexual activity between [prisoners] . . . would jeopardize prison security" and "raise concerns about the transmission of diseases, such as HIV."); Fields v. Smith, 712 F. Supp. 2d 830, 868 (E.D. Wis. 2010) ("The correctional environment can be dangerous, and one major area of security concern is sexual activity, especially sexual activity among inmates, which has a history of being extremely dangerous and volatile."). Reducing the risk of prohibited sexual activity by monitoring plaintiff, without imposing any additional restrictions on him, is rationally related to these legitimate interests. See Casey v. Lewis, 4 F.3d 1516, 1521 (9th Cir. 1993).

As for the denial of plaintiff's request to move in with inmate Wolford, Security Manager Hannon explains that "Inmate Wolford did not qualify for an incentive move because he did not have ninety (90) days clear conduct and had not been at SRCI for three months." Hannon Decl. ¶ 6. The fact that SRCI staff questioned Inmate Wolfard about his relationship with plaintiff does not undermine the neutral reason provided for the denial. Defendants have an obligation under PREA to detect and prevent sexual abuse and activity.


///


///

Page 9 - OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, defendants' Motion for Summary Judgment [58] is granted and plaintiff's Amended Complaint is dismissed with prejudice.

IT IS SO ORDERED.

Dated this _____22nd_____ day of May, 2012.

         ___/s/ Garr M. King_____
         Garr M. King
         United States District Judge